We will now hear Hernandez v. Sessions. Good morning. Good morning, Your Honor. I'm Greg Silbert from Weill for the petitioner Marlene Hernandez. Ms. Hernandez is a victim of terrorism. She is not a perpetrator or supporter of terrorism, and so the material support bar does not apply to her. That's clear, first of all, from the language of the bar itself. The bar reaches aliens who commit an act in support of terrorism, and to commit an act means to do something voluntary, to do something deliberate, to do something blameworthy, to perpetrate. I don't think you would find a single native speaker of the English language who would say that a victim of robbery, someone who was robbed, for that reason alone, has committed an act in support of the robbers. Why didn't she get the waiver? Do you know? Why didn't she get the waiver? The only reason that the government gave is that she did not fully disclose the circumstances of her supposed support for the FARC, but there was no record of that, there's no transcript, there's no appeal. She completed the process and filed the application and went through it. The waiver process is finished. She discharged her. There's no formal application process for the waiver, but she did ask for one. She was interviewed. She didn't get it. So the waiver is over. The issue before us is whether the BIA was reasonable in concluding that the material support terrorism bar does not contain an implicit duress exception and that that issue can only be decided by the Secretary in granting or denying, in your client's case, denying discretionary relief, right? That's the question before us. So why don't you tell us why it was unreasonable for the BIA to have concluded that the bar does not contain a duress exception? Certainly, Your Honor, for several reasons. First of all, the language of the statute, as I said, it requires the alien to commit an act. Ms. Hernandez did not commit an act in support of the terrorists. She was robbed by the terrorists. A second reason is that the government's contrary interpretation. Whether the commission, which she did do, requires a particular mens rea. Well, it gets into whether Ms. Hernandez's support, quote-unquote, for the FARC, which the agency found and the government does not contest, was not voluntary. The agency found she never voluntarily provided any support to the FARC. Now we get into whether the statute, the bar, applies to witting as well as unwitting supporters. Correct. And the first statutory clue there is the language commit an act. And just as a victim of robbery does not commit an act in support of robbery, when you were robbed by terrorists. She's not the victim. Now you're talking about someone who then participates in the robbery. She did not. The motive for participating. I mean, we might as well stay with what actually happened here rather than other hypotheticals. I mean, she committed an act of assistance. The question is why. You're saying that she had mitigating reasons and the secretary didn't grant her discretionary relief now. She didn't commit an act, Your Honor. She was robbed by terrorists. The terrorists came. They threatened her. And then she did what? And then the terrorists burned down her store and then they held a gun to her head. The only act that the government argues triggers the material support bar is that when the terrorists threatened her life, came to her store, and demanded goods from her store, she acceded and gave them the goods. That is being robbed. No different from any criminal pointing a gun at any one of us and saying, you know, give me your wallet. And if we did it because we had a credible fear for our life, nobody would say, hey, you were committing an act in support of the robbers. Let me ask you about something else, and that is the treaty obligations that we have. Yes. How is it that the discretionary waiver approach that Congress has instituted doesn't satisfy those treaty obligations? Because under both our treaty obligations and under Section 241 of the INA, which codifies those obligations, Ms. Hernandez has a non-discretionary right to withholding of removal if she satisfies the criteria, and the agency found here that she does satisfy those criteria if not for the material support bar. And the only relevant exception to that is that the agency found here that she does satisfy those criteria if not for the material support bar. That seems to be the test, whether there's a reasonable basis, reasonable grounds. How is the waiver not enough to satisfy that obligation? Because, Your Honor, there has to be a procedure that meets due process minimums in which Ms. Hernandez can establish that she is not a danger to the security of the United States. And the agency's interpretation makes that entire question relevant only to waiver and not to the initial determination of whether she is eligible to remain in the country. Isn't that part of the waiver decision, whether she is really a danger or not? Well, it is a factor that the executive can look at in the waiver process, which is in the nature of clemency, like a pardon, just as the governor could look at actual innocence to decide whether to pardon a criminal. But that doesn't mean that actual innocence ceases to be a defense in the primary trial. And the only due process protections for that accused criminal are during the trial, not during the clemency process. So the due process protections that Ms. Hernandez is undisputedly entitled to have to be given to her in the primary adjudication by the agency and not in the waiver process, which everyone agrees is purely a matter of executive grace. There are other provisions that explicitly recognize a duress exception. This one doesn't. I grant you that commit an act sounds like you do a thing and not that you are simply the passive victim of something that happens. But obviously a prior panel of this court found this to be ambiguous and sent it back. And so if we start out with the idea that it's ambiguous, and I think you have to start out with the idea that it's ambiguous, the question is why are we not required to give Chevron deference? So the standard that the unanimous Supreme Court articulated for that Chevron Step 2 inquiry is set out in Judling against Holder. And what it says is that if the agency interprets the immigration laws in a way that does not relate to the alien's fitness to remain in the country, then its interpretation is arbitrary and capricious and flunks even Chevron Step 2. So the question is, is the government's interpretation here related to Ms. Fernandez's fitness to remain in the country, and it is not. Because what the government has done here is to exclude an arbitrary class of victims. The government says essentially if the terrorist beats you, you may be eligible for asylum. If the terrorist beats you and robs you, you are suddenly ineligible for asylum because the terrorist derives some support from the robbery. But the robbery is just another act of persecution against Ms. Hernandez. And for that reason, the government's interpretation of the statute is literally self-contradictory. And you see that contradiction on the face of the record in front of you today. Am I correct that the Third Circuit and maybe some other circuits have concluded that there's no duress exception just on the plain wording on the face of the statute? Only one circuit looked at the, quote, plain wording, although it never considered the words commit and act. The other circuits applied Chevron. None of them applied the Judolang test, which I've just articulated to you. I'll reserve the— Can I just be clear on your characterization of this as a robbery? This wasn't a one-time interaction with your client. If I understood the BIA's decision or the agency's decision, she's supposed to have supplied FARC with food and merchandise, modest quantities, every three months, right? The agency found that the FARC threatened her for a long period of time, and she resisted. Finally, she acceded. FARC members came to her store every few months. They demanded goods. Right. They took them. To that extent, she acquiesced, as you said, and so there is the claim of duress. But it wasn't like they came in one time and just cleaned out her shelves. Over a period of two years, every three months or so, she would acquiesce in providing them food and merchandise, right? Correct. Under threat, you say. Eventually, they burned down her store. They held a gun to her head. Didn't the BIA conclude it was all involuntary, though? I mean, that's not on the table, right? It is not before you. It was all involuntary, no matter— Yes, that's right, Judge O'Connor. It was all involuntary. They robbed her multiple times, but they always robbed her. And that is the only act that the government finds triggers the material support bar. And if you look at page 100 of the record, the immigration judge found that that exact same fact makes Ms. Hernandez eligible for asylum. It found that she's entitled to withholding of relief and asylum because the FARC persecuted her, including by extorting goods from her store. But the extortion of goods from her store is the exact same fact that the government says makes her ineligible under the material support bar. So as the government reads the statute, it is literally a contradiction. The same fact establishes eligibility and ineligibility. And I submit to you that is as certain an indication as you will ever get that the government's interpretation is wrong. I'll reserve the balance of my time. Good morning, Your Honors. Excuse me. Jeffrey L. Menken, United States Department of Justice for the Attorney General. The board's decision here follows four circuit court decisions that have all agreed that the material support bar does not include an implied duress defense. And there is no basis for this court to hold otherwise. I would point out that of the four, three, the Third Circuit, Fourth Circuit, and Ninth Circuit conducted de novo review. It was only the Eleventh Circuit that deferred to the board's decision, and that's the Alturo case. There are a number of reasons that the board identified, which happen to be the same reasons that the four circuit courts identified, for reading the provision in context and concluding that Congress did not intend for this to be an implied defense, a defense that is not there but can be imputed to the statute. I can go through those. We discussed those in our brief. They include that in the very same subsection where the material support bar is 8 U.S.C. 1182 A3B, in A3D there is a provision that makes one excludable for membership in a communist or totalitarian organization, but specifically and explicitly includes an exception for voluntariness or involuntariness. And the board, as have the other circuit courts, have found that . . . But no one gets, no one is entitled on the face to asylum because they are a member of a totalitarian party. What do you say to your adversary's argument that it is at least very peculiar that the very same events that qualify Ms. Hernandez for asylum also bar her from getting it? That's not unusual, Your Honor. We see cases all the time where someone says, I was persecuted because I was chief of police of a village. And that very same grounds of persecution turns out to be grounds for a bar, under the persecutor bar or for other things. What we have here is, at its core . . . Or you can be persecuted because you're chief of police of the village. Right, and you can also be a persecutor because you're chief of police of the village. That's not a good example. At its core . . . It isn't, because you're talking about two different instances, very likely. At its core, Your Honor, Congress drafted the material support bar, the terrorism bars, to be broad. And they delegated to the Secretary of DHS and the executive wide authority in their administration. That's what the exemption was created to do. And in this case, the process worked as it was supposed to. Ms. Hernandez had her hearing . . . Can you tell me whether the waiver is real? In other words, does it really comply with our treaty obligations? It may sound good that you can get a waiver now. And Congress has required reporting of waiver applications and whether they're granted or not. And I got the 2014 report. And just like most reports, it's kind of impossible to understand. But it looks like for Tier 1 or 2 under duress exemption waivers, there's only four granted for asylum applicants. And for Tier 3, only ten. Am I wrong about that? I mean, how do we know whether . . . And how does Congress know whether, okay, these are real. These waivers are real and people who deserve them are getting them. They're very much real, Your Honor. I've had cases where people received exemptions. This case is here instead of the EYE case and the IVAS case because EYE and IVAS, as it turns out, got exemptions. So the snapshot that we're looking at, I think that was a 2014 report, which is not a public report, by the way. It's not a public report. The reports to Congress aren't public. A group called Judicial Watch got hold of it and put it on the Internet. But be that as it may, we don't know what that . . . We don't know what that means. How many applicants were there? How many eligible people were there? The Eighth Circuit . . . Has Congress conducted hearings, follow-up hearings, to say, okay, now we've got the reports. Let's go through this and see to make sure that those waivers are really kind of consistent with what we intended? There have been hearings over time, going back to 2005, 2006, and 2007. There was a very lengthy discussion in the 2007 Congress. What is . . . I think the Eighth Circuit, and a case that we cite in our brief, the Ershad case, says that the exemption process is not a sham. It involves some very . . . We're talking about national security matters, very sensitive matters. A lot of factors go into their consideration. And the process takes time. And the fact that not every single person who might qualify for one gets one is indicative of nothing. The numbers that the 2014 reports show aren't indicative of anything. There are 10 . . . So you're representing that there are significant numbers of waivers that are granted? I don't know how to categorize the name significant. I know that I've had cases . . . My office, my unit is the only unit that deals with appellate cases at this point. And I can represent that eight or nine matters have gotten exemptions. It happens. It works. Ms. Hernandez had her . . . was considered. She was interviewed. And in the end, she didn't get it. That doesn't mean that there's something wrong with the statute or Congress needs to change the statute. Do you know why she didn't get it? The notification letter is not in this record. It was attached to Ms. Hernandez's brief previously. I have a copy of it if the Court wishes to see it. But it says that she was not forthcoming in all of the information regarding her provision of support. There's a characterization of that in the record in the DHS's board brief. Was that based on the evidence before the original agency hearings? Or was there a separate submission to the Attorney General in connection with that? Ms. Hernandez, in this instance, was interviewed. She was interviewed? Yes. Okay. Essentially, what the board did is what the Fourth and the Third and the Seventh and the Ninth and the Eleventh Circuits did. And that is find, based on reading this one provision in context, that there is no implied defense there. There's nothing . . . I mean, suppose, hypothetically, if FARC wanted a vehicle and they carjacked it. Put a gun to somebody's head and say, get out. Person gets out. They drive away.  So that they needed to rest exception in order to benefit from this. That's a much closer case, Your Honor. And I think we're conflating the commission of an act with the legal ramifications of it. Getting out of your car and giving it to somebody is a bigger contribution by way of material support. What we don't have here, Your Honor . . . I think Ms. Hernandez did. I'm sorry. What we don't have, Your Honor, is FARC breaking into a store and taking items from Ms. Hernandez and rushing out the door with them. Why did they have to do that? She provided a box every couple months over the course of almost two years. But you don't dispute it was involuntary. I mean, the BIA has decided that. We conclude all of this conduct was involuntary. On her part, she was afraid. Right. And Congress did not draft this statute with a specific intent requirement. You don't even have to know that you're giving this box to a Tier 1 organization. So, if Congress wanted a specific intent, if it wanted a voluntariness, it knows very well how to do that. It has done it in other circumstances. It did not hear. That's what four circuit courts have found, what 12 federal circuit judges have found. And the question is, is there a reason to go elsewise and create a circuit split, essentially? And there is no grounds for that. None. That Ms. Hernandez, at the end of the day, that she didn't get a waiver or an exemption, that's how it's designed. Congress is aware. Let me just ask about Chevron deference to the BIA opinion. I'm curious as to what is in the opinion that was helpful to us that we would not know in our jobs. In other words, that seems to be what Chevron deference is about, that your agency or the agency you represent knows something about how all this works that we don't, and that's why it's helpful to us. What's in the opinion other than it's kind of like a legal opinion like we would write? Your Honor, it touches on, I wouldn't disagree, because what the board did is what the circuit courts did, and that is analyze the statute. So the term deference in the context of Chevron 1, it's used, but it may not mean defer to their expertise to the extent that there is any remaining ambiguity, and this is the agency that oversees it. Yes, they are entitled to deference, but the Third Circuit in the SESA case reached this on a de novo review, as did the Ninth, as did the Fourth. And as I said, only the Altero case out of the Eleventh says explicitly we are deferring to the board. But my time has expired, Your Honors. I would just say that what the board did here comports with the statutory language, comports with what the circuit courts have found. There's no reason to hold differently, and I would ask that the board's precedent decision that the court had requested be affirmed. Thank you. Thank you. Thank you, Judge Jacobs. First, as to the contradiction, there is no other case like this, okay? This is not, as in Mr. Mencken's analogy, where somebody is persecuted because he is a police captain and his status as a police captain also makes him a persecutor. In this case, the very act of persecution against Ms. Hernandez, as found by the IJ, that makes her eligible for asylum and withholding of relief also makes her ineligible. The exact same fact, not a related fact, the exact same circumstance, establishes both eligibility and ineligibility under the government's interpretation of the statute, and a self-contradictory reading of the statute flunks every version of Chevron there could ever be, okay? With respect to your carjacking analogy, Judge Jacobs, this is exactly like the carjacking. The only difference is that in your analogy, they took a car, and in the real case, they took her food from her store. But as you've pointed out, Judge Troni, the agency found, and the government does not contest, that Ms. Hernandez never voluntarily provided any support to the FARC, far from it. She supported the government. That's why they put a gun to her head. That's why they threatened to kill her multiple times and her family. That's why they burned down her store and her hotel. They persecuted her. The very same terrorists that she's being excluded for quote-unquote supporting are the ones who repeatedly threatened her life and tried to kill her. With respect to the waiver process, okay, the waiver process, as the government itself says in its brief, provides no substantive or procedural right to anyone. There is no right to apply for a waiver. Two of the versions of the travel ban executive order proposed getting rid of the waiver. The latest and greatest travel ban executive order does not propose that, but the entire waiver process could be eliminated by the executive at any time with the stroke of a pen. There is no right to have counsel present at the waiver interview. There's no right to an interview at all. There's no formal application process. The waiver is purely a matter of executive grace like any clemency circumstance, like a pardon by the executive. It does not provide Ms. Hernandez or anyone else a substantive right to have her nondiscretionary claim for withholding of removal adjudicated in a fair proceeding that meets due process minimums. And as the IJ explicitly found here, if not for the material support bar, Ms. Hernandez would be entitled to withholding of removal as the government acknowledges on page 8 of its brief. And the only exception, the only exception, as you pointed out, Judge Droney, that would apply to her is if she is a danger to the security of the United States. But she's not a danger because, among other reasons, she never supported a terrorist. But under the government's reading of the statute, the only opportunity that she has to even make that showing is in the waiver process. And the waiver process is completely illusory. She doesn't even have a right to get it. So the government's interpretation violates the plain language of the statute. It does not meet our international obligations. It does not comply with even Section 241 of the INA, which sets out withholding of removal. And it does not meet the Chevron test, both because it's self-contradictory and because the standard that the Supreme Court set out in Judulang and explicitly applied to Chevron Step 2 and footnote 7 of that decision says if the agency's interpretation of the immigration law does not relate to the alien's fitness to remain in the United States, it is arbitrary and capricious and it does not pass Chevron and nothing about the government's interpretation of this statute that applies the bar to Ms. Hernandez for simply being a victim of terrorism has anything to do with her fitness to remain in the country. If anything, she's eligible. Thank you. Thank you both. We'll reserve decision.